IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| AMANDA M. HILL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action |
| vs. ) | No. 07-3445-CV-S-JCE-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**O R D E R**

Plaintiff is appealing the final decision of the Secretary denying her application for disability insurance benefits ["DIB"] under Title II of the Social Security Act, 42 U.S.C. § § 401, et seq., and her application for supplemental security income benefits ["SSI"] under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq. Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), this Court may review the final decisions of the Secretary. For the following reasons, the Secretary's decision will be reversed.

Standard of Review

Judicial review of a disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one

1

position represents the Agency's findings, the Court must affirm the decision if it is supported on the record as a whole. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A). Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990). In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment. Id. Once a claimant demonstrates that the impairment is so severe as to preclude the performance of past relevant work, the burden shifts to the Secretary to prove some alternative form of substantial gainful employment that claimant could perform.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well settled. The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions. Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). When rejecting a claimant's subjective complaints, the ALJ must make an express credibility determination detailing the reasons for discrediting that testimony, and discussing the factors set forth in Polaski. The ALJ must give full consideration to all of the relevant evidence on the Polaski factors and may not discredit subjective complaints unless they

are inconsistent with the evidence in the record as a whole.  Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994).

## Discussion

Plaintiff, who was 26 years old at the time of the hearing before the ALJ, has a General Equivalency Diploma.  Plaintiff alleges that she is disabled due to fibromyalgia, back pain, and hearing loss.  She has past relevant work as a customer service clerk, telephone solicitation order taker, and short order cook/waitress.

At the hearing before the ALJ, plaintiff indicated that she has severe hearing loss. She can read lips, and stated that she could manage the hearing without an interpreter for the hearing-impaired as long as the speakers looked at her when they talked to her.  She testified that her hearing has gotten worse over the last two and a half years, and is completely gone in her left ear. She cannot hear without a hearing aid in her right ear.  It was her testimony that her treating physician, Dr. DeTar, advised her that she would be completely deaf within a year, and that her hearing aid would not work.  Plaintiff testified that at her last job, where she worked at a call center for about a year, she answered the phone and took complaints.  She had hearing problems at the time, and had an ear set for the phone, which was set as loud as it would go.  She was terminated at the job, but not because of her hearing problems.  At another call center, she took phone orders and made sales; she did not like that job and quit.  At the time of the hearing before the ALJ, plaintiff testified that she could still use a regular phone, although it was getting harder to do so.  She stated that her hearing aid was working at the hearing, but it was still hard to hear and she was reading lips.

3

The ALJ found that plaintiff met the insured status through June 30, 2004, and that she has not engaged in substantial gainful activity since March 2, 2003, the alleged onset date. He further found that she suffered from hearing loss, a severe impairment, but that the evidence demonstrated that her hearing could be restored with a hearing aid. It was also the finding of the ALJ that plaintiff did not suffer from an impairment or combination of impairments that met or medically equaled a listed impairment. He found her not entirely credible. It was the ALJ's further finding that plaintiff had the residual functional capacity to perform medium work, involving occasional lifting of less than 50 pounds; frequently lifting of 25 pounds; sitting with intermittent walking/standing for six hours in an eight-hour workday; stooping, kneeling, crouching, reaching, and crawling without restrictions; occasional balancing; and no climbing. The ALJ found that plaintiff had good use of her arms and hands for grasping, holding and turning objects. Based on these findings, the ALJ rendered the decision that plaintiff was not disabled, and that she was capable of performing her past relevant work as a customer service clerk, telephone solicitation order taker, and short order cook/waitress.

Plaintiff argues that the ALJ erred in finding that she could return to her past relevant work, despite the fact that she has a severe hearing impairment. She asserts that the ALJ disregarded her profound hearing loss and presented a hypothetical question to the vocational expert, which did not include the full scope of her limitations due to her hearing loss. She also contends that the ALJ erred in disregarding the opinion of her treating ear doctor, who was a specialist, and who clearly noted that she understood other people by lip reading. It is contended that the ALJ improperly relied on the report of Dr. Carraher, a consultative examiner, over that of Dr. DeTar, the specialist. Plaintiff also asserts that additional evidence from the specialist

was submitted to the Appeals Council, which bolstered the doctor's opinion and further undermined the ALJ's decision. She contends that the Court should consider this new and material evidence when making its determination regarding whether the ALJ's opinion was based upon substantial evidence.

It is defendant's contention that the ALJ properly found that the severity of plaintiff's hearing impairment was not credible to the extent she alleged. It is argued that the medical evidence shows that she exaggerates her symptoms, such as those regarding her fibromyalgia. It is also submitted that she did not complain of significant hearing loss when she saw a doctor regarding the fibromyalgia in 2004, and that when she saw another doctor that year for complaints of hearing loss, he noted that she could understand his speech at a conversational level without having to raise his voice.

A review of the record indicates that the ALJ rendered his decision at Step Four of the evaluation process, but that he did utilize the services of a vocational expert. When the ALJ posed a hypothetical to the vocational expert, his restriction in terms of plaintiff's hearing was that the expert should "assume she needs some kind of a TDD equipment, or hearing aid or both for communications due to high level sensarnerial (Phonetic) hearing impairment. Assume with, with an assistive device like that, communication can be, be done, she, she can hear." [Tr. 45]. The vocational expert responded: "Assuming the, the hearing can be corrected with the use of apparatus such as hearing aids, so that it, it can be done, you know, with reasonable degree of accuracy on a frequent basis, the Order Clerk and the Customer Service Clerk would still be, would be within the hypothetical as would be a potential to be an informal Waitress–" [Tr. 45-46]. Upon some questioning by plaintiff's representative, the vocational expert noted that his

5

opinion that plaintiff could perform some of her past relevant work was based on the assumption that she had "the capacity to hear on a, the job requires frequent hearing with reasonable acuity." [Tr. 47]. The expert also noted that the ALJ's hypothetical "stated that she would be able to hear adequately with the use of a hearing aid or a TTD (phonetic), you know the – telephone." [Id.].

      The ALJ, in rendering his decision, found that plaintiff's "hearing can be restored with a hearing aid." [Tr. 17]. "In addition, the results of her audiogram and hearing tests were questionable. Thus, the undersigned finds that the claimant's hearing impairment does not meet the criteria of sections 2.07 or 2.08." Id. Regarding the opinion evidence, the ALJ stated that he gave weight to the treating and examining physicians. He noted that Dr. Gilbert, a treating physician, found that plaintiff's hearing loss was severe, but that she was able to understand conversational speech with her hearing aid. He further gave "significant weight to the assessment done by Dr. Carraher, who was not only able to examine the claimant, but he also reviewed all her medical evidence. He found that the claimant's hearing loss was well corrected and she should be able to do medium work." [Tr. 20]. The ALJ gave "little weight to the assessment done by Dr. DeTar who found the claimant's hearing loss to be profound and recommended a cochlear implant. Dr. DeTar seems to have relied heavily on the claimant's complaints, and she has been shown to be an unreliable historian. In addition, in the same report, Dr. DeTar noted that claimant was able to communicate normally." [Id.]. In evaluating plaintiff's complaints aside from her hearing loss, the ALJ noted that she tended to exaggerate her symptoms and limitations.

      The record indicates that plaintiff saw Dr. Erik Gilbert, M.D., in 2004 with a chief complaint of hearing loss. During his physical exam of her, he observed that she utilized a

6

normal voice, and could understand his speech at a conversational level without him having to raise his voice. Based on a review of audiograms and tympanograms, the doctor observed that she suffered from severe sensorineural hearing loss bilaterally, with 84% discrimination ability in each ear. It was his diagnosis that "[t]his patient has severe to profound bilateral sensorineural hearing loss by Audiogram, with no clear etiology." [Tr. 372]. He also noted that some elements of her evaluation were not consistent, and that he would not have expected her understanding at the conversational level to be as good as it was "given the degree of the loss on the Audiogram. In fact, by audiometric criteria, she would be a cochlear implant candidate." [Id.]. He also noted, however, that some of the testing was consistent with the audiogram, and that repeat audiometric testing was indicated; if the results were reproducible, the doctor opined that plaintiff would benefit from hearing aids. A notation in the record for September of 2004 indicated that plaintiff was called on the telephone and advised that she was eligible for a hearing aid through Medicaid. The doctor indicated that plaintiff was able to communicate easily over the phone, although she stated that she was using an amplified phone, and was still having difficulty hearing. A month later, the medical record indicates that plaintiff was doing well with the right hearing aid.

In July of 2006, plaintiff saw Dr. Thomas DeTar, M.D., a doctor of otolaryngology, regarding her hearing. She complained that she could not hear out of her left ear and that she had to lip read. Dr. DeTar found that plaintiff had profound hearing loss in the left ear and severe loss in the right. He thought she would benefit from a cochlear implant. She was seen again a few weeks later by Dr. DeTar, who relied on a audiogram to conclude that plaintiff had no response in her left ear, and profound sensorineural hearing loss in the right ear. Her

7

discrimination ability in her right ear was 76%, rated "Fair," and it could not be tested in the left ear. [Tr. 418]. He found that she was a candidate for a cochlear implant.

When seen by the consultative examiner in November of 2006, Dr. Carraher reviewed the records of Dr. Gilbert. He concluded that with the hearing aid in, plaintiff had normal conversational speech. He stated that although she was convinced that she was going to have deafness within the next few years, there was nothing in the record to support that. Dr. Carraher found that she had hearing loss, with normal conversational speech with a hearing aid, probable fibromyalgia, and probable symptom magnification. He concluded that consideration for a psychological evaluation should be made.

In records submitted to the Appeals Council, and reviewed by that agency, Dr. DeTar indicated that he had performed another hearing test on June 5, 2007. On this visit, Dr. DeTar noted that, although plaintiff was referred to the University of Washington for cochlear implants, she was unable to be seen there because of the distance and childcare issues. He noted that she "has continued to have progression of her hearing loss. She can only understand speech by reading lips. She feels that her ability to understand words with the use of her hearing aid has become more and more difficult. She is currently seeking disability for her hearing loss and states that she is unable to hear alarms." [Tr. 425]. Dr. DeTar also noted that plaintiff's spoken voice was normal and that she communicated using her spoken voice, but that she was unable to communicate without lip reading. The audiogram results indicated that her discrimination ability had diminished to 56% in her right ear, which was rated as "Poor," and that she could not be tested for her left ear. The doctor opined that "patient has profound sensorineural hearing loss bilaterally and will require a cochlear implant to have any restoration of her hearing. She should

be considered completely disabled due to his profound hearing loss as she would be unable to communicate on a regular basis without a cochlear implant." [Tr. 425].

The Appeals Council indicated it considered plaintiff's arguments and the additional evidence, and denied her request for review.

Plaintiff contends that the ALJ erred by not affording proper weight to the opinion of the treating physician, Dr. DeTar, who is a specialist. While a treating physician's opinion is ordinarily to be given substantial weight, it must be supported by medically acceptable clinical or diagnostic data, and must be consistent with substantial evidence in the record. Haggard v. Apfel, 175 F.3d 591, 595 (8th Cir. 1999); Strongson v. Barnhart, 361 F.3d 1066, 1070 (8th Cir. 2004). Further, the Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist. See Metz v. Shalala, 49 F.3d 374, 377 (8th Cir. 1995).

Having carefully reviewed the record as a whole, the Court finds that the ALJ erred in the weight afforded to the treating physician, Dr. DeTar. It is clear that the doctor treated plaintiff over a period of time; that he utilized recognized diagnostic tools to measure her hearing on more than one occasion; and that he determined that she had a profound hearing loss, had to rely on lip reading and a hearing aid, and would require surgery to have any restoration of hearing function. The ALJ's conclusion that Dr. DeTar relied on plaintiff's subjective complaints is contradicted by the record. Additionally, another treating physician found that she had severe hearing loss, and again, this conclusion was based on diagnostic tools. While Dr. Gilbert found some inconsistencies, he also noted that if the audiogram results were reproducible, a hearing aid would be recommended, and a few weeks later, plaintiff was advised that Medicaid would pay

9

for a hearing aid. Therefore, both treating physicians diagnosed plaintiff with a severe hearing loss. The Court finds it was error to afford greater weight to a one-time consultative examiner in this case, and to discount the opinion of a specialist.

Additionally, new evidence was submitted to the Appeals Council by plaintiff's treating physician, which indicates that her hearing has further deteriorated, that she is unable to communicate without lip reading, and that she will require a cochlear implant to have any restoration of her hearing. The doctor also stated that plaintiff should be considered completely disabled because without the cochlear implant, she would be unable to communicate on a regular basis. While that opinion is not binding on the Court, it is nevertheless consistent with the specialist's previous opinions regarding the severity of her hearing loss, which opinion was otherwise supported by another treating physician.

The record indicates that the Appeals Council considered plaintiff's additional medical records in denying review. Under these circumstances, the Eighth Circuit has explained that the Court must decide whether the ALJ's decision is supported by substantial evidence in the record as a whole, including the new evidence. Kitts v. Apfel, 204 F.2d 785, 786 (8th Cir. 2000); Mackey v. Shalala, 47 F.3d 951, 953 (8th Cir. 1995). Therefore, the Court must determine, considering the entirety of the record, whether the ALJ's determination that plaintiff was not disabled is supported by substantial evidence.

After careful review, this Court finds that it is not. The evidence in the record, especially in light of the later medical records from Dr. DeTar, convinces the Court that there is not substantial evidence in the record as a whole to support the ALJ's decision that plaintiff was not

disabled by her hearing loss. The Court finds that is was error to not have given controlling weight to the treating physician.

Considering the evidence as a whole, the Court finds the record does not contain substantial evidence to support the ALJ's decision that plaintiff is not disabled by her hearing loss. The Court may affirm, modify or reverse the Commissioner's decision with or without remand to the Commissioner for rehearing. 42 U.S.C. § 405(g). In this case, where the record itself "convincingly establishes disability and further hearings would merely delay receipt of benefits, an immediate order granting benefits without remand is appropriate." Cline v. Sullivan, 939 F.2d 560, 569 (8th Cir. 1991), citing Jefferey v. Secretary of H.H.S., 849 F.2d 1129, 1133 (8th Cir. 1988). The Court finds the ALJ's decision should be reversed, and this case should be remanded for calculation and award of benefits.

It is hereby

ORDERED that plaintiff's motion for judgment on the pleadings be, and it is hereby, granted. It is further

ORDERED that, pursuant to 42 U.S.C. Section 405(g), this matter be remanded to the Commissioner for the calculation and award of benefits.

/s/ James C. England
JAMES C. ENGLAND, CHIEF
United States Magistrate Judge

Date: 1/26/09